UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA BISHOP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 16 C 7703<br><br>Magistrate Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

MICHAEL T. MASON, United States Magistrate Judge:

　　Claimant Donna M. Bishop ("Bishop" or "Claimant") brings this motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Bishop's claim for disability insurance benefits under Sections 216 and 223 of the Social Security Act (the "Act"), 42 U.S.C. §§ 416(I) and 423(d). The Commissioner filed a cross-motion for summary judgment, requesting that this Court uphold the decision of the administrative law judge (the "ALJ"). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, Claimant's motion for summary judgment [23] is granted and the Commissioner's cross-motion [33] for summary judgment is denied. The case is remanded for further proceedings consistent with this Opinion.

I. **BACKGROUND**

　　A. **Procedural History**

　　Bishop filed for period of disability, disability insurance benefits and disability for disabled widow's benefits on September 12, 2003. (R. 21.) Bishop alleges that she has

1

been disabled since September 5, 2013 due to inflammatory arthritis, degenerative disc disease, a mixed connective tissue disease, fibromyalgia, and depression. (R. 24-26.) Both of Bishop's applications were initially denied on January 2, 2014, and upon reconsideration on June 23, 2014. (R. 21.) On July 7, 2014, Bishop filed a request for a hearing. (*Id.*) She appeared and testified at a hearing before ALJ Roxanne J. Kelsey on August 25, 2015. (R. 21-31.) The ALJ issued a decision denying Bishop's disability claim on November 18, 2015. (R. 31.) On January 17, 2016, Bishop requested review by the Appeals Council. (R. 6.) On May 25, 2016, the Appeals Council denied Bishop's request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1-3); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Bishop subsequently filed this action in the District Court.

### B. Relevant Medical Evidence

#### 1. Dr. Syed Rizvi - Rheumatologist

Prior to her alleged disability onset date, Bishop had a number of visits with Dr. Syed Rizvi, a rheumatologist. During these early appointments, Claimant reported pain and stiffness in many areas including her back (447-48, 462-63, 503), neck (R. 482-483), right arm (R. 480-81), wrists (*Id.,* R. 484-85), hands (R. 473-74), fingers (R. 516), knees (R. 480-81, 484-85), and joints (R. 455-56). On July 14, 2012, Dr. Rizvi gave Claimant a cortisone injection in her wrist. (R. 471.) Over the course of several visits, Dr. Rizvi diagnosed Claimant with seropositive rheumatoid arthritis (R. 448, 479, 515), fibromyalgia (R. 501, 507, 531), meralgia paresthetica (R. 501, 520, 534), idiopathic osteoporosis (R. 463, 501, 506), osteopenia (R. 448, 456, 501), osteoporosis of the left hip (R. 463, 466, 515), cervical and lumbosacral spondylosis (R. 448, 472, 515),

unspecified internal derangement of the left knee (R. 485, 520, 534), restless leg syndrome (R. 448, 477, 516), and stage 3 chronic kidney disease (R. 508, 526).

During appointments with Dr. Rizvi after her alleged September 5, 2013 onset, Claimant reported that she continued to experience pain in her neck, back, wrists, hands, joints, and all over her body. (R. 391, 564, 604, 611, 637.) She also reported that physical activity caused her pain to worsen. (R. 391, 564, 620.) At various appointments, Dr. Rizvi observed that Claimant had swelling and tenderness in the wrists, joints, shoulders and thumb. (R. 391, 480-81, 471.) Dr. Rizvi also observed that Claimant had full range of motion in her cervical spine and neck, a bilateral complete handgrip, and normal ambulation. (R. 481, 391-392.)

### 2. Dr. Sheila Berndt – Primary Care Physician

In August of 2013, Claimant reported chronic constipation, bloating, and abdominal pain to her primary care doctor, Dr. Sheila Berndt. (R. 444.) A pelvic ultrasound demonstrated fatty infiltration of Plaintiff's liver. (R. 433.) In September of 2014, she reported feeling depressed, having trouble sleeping, and experiencing anxiety. (R. 575.) She was tearful during examination. (R. 576.) Dr. Berndt diagnosed Claimant with depression, prescribed Sertraline and Zoloft, and referred her to a therapist. (R. 576-77.) Dr. Berndt again diagnosed her with depression in May of 2015. (R. 600-01.)

### 3. Dr. Mahesh Shah – Internal Medicine Consultative Examiner

On June 2, 2014, Claimant underwent an internal medicine consultative examination with Dr. Mahesh Shah, who noted that Claimant had a mild tenderness in her lower back, mild swelling of the joints and wrists, slight difficulty with heel and toe

3

walking, and trouble squatting. (R. 551-54.) Claimant reported she was in good health until 2005 when she started having pain in her hips which then spread to her joints. (R. 551.) She also reported significant pain in her shoulders. (*Id.*) Dr. Shah noted that Claimant could walk into the office without assistance, she was able to move around with no problem, and she was able to get up from the chair and onto the examining table without difficulty. (R. 552.) Dr. Shah also noted full range of motion in all her joints and upper extremities and normal handgrip. (R. 553-54.) Dr. Shah diagnosed rheumatoid arthritis, mild fibromyalgia, and mild depression. (R. 554.)

### C. Claimant Testimony

At the hearing, Claimant testified that she had worked until September 27, 2013. (R.41.) Claimant testified that she continued to receive payments from her job in October, November, and December of 2013, and during the first quarter of 2014 for accrued vacation time and sick days. (R. 42.) Claimant also reported she lives alone with two large dogs. (R. 43.) She walks them about once a month. (R. 44.) She can drive but not for too long. (*Id.*) She does her own laundry, shopping, cooking, and cleaning but with limited ability because she has to stop often and she can lift only a few items. (R. 46-47.) Claimant enjoys drawing and cross-stitching but has not been doing those activities lately because those items are packed up in boxes, in light of an upcoming move. (R. 47-48.) She reported that her house is in foreclosure, which is why she is moving. (R. 48.) She also reported that she has a computer and she is able to type to send emails but she is unable to stay on the computer longer than ten minutes at a time before her hands start cramping. (*Id.*) Claimant testified that lately she has only been able to clean, do laundry, and grocery shop about once a month.

(*Id.*)  She has no trouble remembering her doctors appointments or to take her medication.  (R. 49.)  She reported that she has pain in her hands, back, right shoulder, and knees. (R. 50.)  Most days the pain is at a 20 on a scale of 1 to 10.  (R. 51.)  She also reported that moving and stacking boxes for her move have irritated her pain and she had to stop. (R. 52.) Claimant can sit for 45 minutes at a time and stand for 10 minutes at a time.  (*Id.*)  When she washes a dish, she is unable to pick it up and she must pin it down to the sink or against her stomach to wash it with one hand.  (R. 53.)  She uses a wagon to transport groceries from her car in the garage into the house.  (R. 55.)

   D.  <u>Vocational Expert Testimony</u>

Vocational Expert Pamela Tucker (the "VE") also testified at the hearing. (R. 58-67.)  The ALJ asked the VE to classify Claimant's past work as a custodian and a security guard.  (R. 60.)  The VE asked Claimant to clarify some of the work she did during her employment as a custodian in which she was cutting grass and shoveling snow.  (*Id.*)  Claimant testified that she only shoveled light snow and used a snow blower.  (R. 61.)  When the snow was too heavy, Claimant explained that another employee would be assigned to assist with the heavy shoveling or snow blowing.  (*Id.*)  Claimant also testified that the lawn mower was a self-propelled mower and she only had to place her hands on the bar to push it slightly.  (R. 62.)  The VE testified that Claimant's occupation as a custodian is classified as medium and unskilled, although the VE noted that Claimant performed it more as light.  (R. 64.)  The VE also classified Claimant's occupation as a security guard as light and semi-skilled.  (*Id.*)

5

The ALJ asked VE Tucker to assume the following hypothetical person: an individual with Claimant's age, education, and work experience who (1) would be limited to sedentary work, (2) could not climb ladders, ropes or scaffolds, (3) could occasionally climb ramps and stairs, and (4) should avoid concentrated exposure to unprotected heights and dangerous moving machinery. (R. 64.) The ALJ asked the VE whether such an individual would be able to perform the custodian and security guard jobs. (*Id.*). VE Tucker testified that such circumstances would preclude the custodian job at the medium but would allow for it to be performed as light, which is how Claimant had been performing it. (R. 65.) The ALJ then asked the VE to assume the same facts as the first hypothetical but to make the following changes; no more than occasional use of the left non-dominant upper extremity for fine and/or gross manipulation. (*Id.*) The ALJ asked how those changes would impact the Claimant's ability to do either job. (*Id.*) The VE testified that those circumstances would not allow for the custodian job but would allow for the security job. (*Id.*) The ALJ then asked the VE to assume the individual was limited to no more than rare use of the left non-dominant extremity for fine and/or gross manipulation and the VE testified that this would still be allowable. (R. 65-66.) The VE noted that the regulations do not discuss the use of the dominant versus non-dominant so her determination on this issue was based on her own experience. (R. 66.)

## II. LEGAL ANALYSIS

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant

6

evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 S.Ct. 1420 (1971)). In our review, we must consider the entire administrative record, but will not consider "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute or own judgement for that of the Commissioner." *Lopez v. Barnart*, 336 F.3d 535, 539 (7th Cir. 2003) (*citing Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (*quoting Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," she "must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence…[and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curium) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

### B. Analysis under the Social Security Act

To qualify for disability benefits, a claimant must be "disabled" under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the

ALJ must consider the following five-step inquiry "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considered conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing a disability at steps one through four. *Zurawski*, 245 F.3d at 885-86. If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here, the ALJ followed this five-step analysis. At step one, the ALJ found that Claimant was "not engaged in substantial gainful activity since September 5, 2013, the alleged onset date." (R. 24.) At step two, the ALJ determined that Claimant has the severe impairments of inflammatory arthritis, degenerative disc disease, and a mixed connective tissue disease. (*Id.*) At step three, the ALJ found that Bishop "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 26.) The ALJ evaluated each of Claimant's impairments (inflammatory arthritis, degenerative disc disease, and mixed connective tissue disease) in the context of an identified listing. (R. 26-27.) Based on the findings in Claimant's lab tests and medical records, the ALJ found that none of her impairments meet or was medically equal to the listed impairments. (*Id.*)

At step four, the ALJ found that Claimant has the residual functional capacity ("RFC") to perform light work and also that she could frequently climb, stoop, kneel, crouch or crawl. (R. 27.) The ALJ examined the daily activities as part of her analysis and she noted that Claimant can drive for 3 to 4 hours, limited only by her difficulty holding the steering wheel for longer periods. (R. 28.) The ALJ also noted that Claimant watched television for 12 hours per day and sang karaoke 3 hours at a time twice per week. (*Id.*) Although the ALJ noted that Claimant could use the computer only for up to 10 minutes at a time before her hand started cramping, the ALJ also noted that Claimant reported hobbies such as needlework for 3 hours per day and drawing. (*Id.*) The ALJ acknowledged that Claimant could prepare sandwiches and soups, and eats food out of cans or jars she opens by herself. (*Id.*)

The ALJ also highlighted some medical evidence in the record. Claimant's rheumatologist, Dr. Rizvi, found that Claimant had full range of motion in her cervical spine, elbows, shoulders, hips, and knees, and while she exhibited some mild swelling and tenderness in her left wrist, she retained a bilateral complete handgrip. (*Id.*) The ALJ further noted that Claimant's primary care physician, Dr. Berndt, found that her hand and finger grasps, and fine and gross manipulations were all normal. (R. 29.) Dr. Berndt also noted that Claimant had 5 out of 5 motor strength in all extremities, exhibited a full range of motion in all joints in her upper and lower extremities, and her gait was normal. (*Id.*) The ALJ also noted that the opinions of two state agency medical consultants, Dr. Gotanco and Dr. Madala, showed Claimant could frequently lift or carry 10 pounds, occasionally lift and/or carry 20 pounds, sit for 6 hours in an 8-hour work day, stand and/ or walk for 6 hours in an 8-hour work day, occasionally climb ramps,

9

stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) For these reasons, the ALJ found that "[C]laimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (R. 28-30.) The ALJ ultimately found that Claimant could perform her past relevant work as a custodian and as a security guard. (R. 30-31.)

Because the ALJ found that Claimant could perform her past relevant work, the ALJ's sequential evaluation of Claimant's disability claim ended at step four. Accordingly, the ALJ determined that Claimant "has not been under a disability, as defined in the Social Security Act, from September 5, 2013 through the date of decision." (R. 31.)

Bishop now argues that the ALJ's analysis of her subjective complaints was legally insufficient and that her conclusion that Claimant's statements were not credible was not supported by substantial evidence. Bishop also argues that in determining Claimant's RFC, the ALJ improperly relied on the testimony of one state agency physcian over another without providing an adequate reason. Finally, Bishop argues that the ALJ's determination that Bishop could perform her past work at Step 4 was contrary to Social Security Ruling 82-62.

### C. The ALJ Failed To Build An Accurate And Logical Bridge From The Evidence To Her Conclusion That Claimant Was Not Entirely Credible.

We first address Bishop's argument that the ALJ improperly analyzed her credibility with respect to her disabling symptoms. In particular, Bishop argues that the ALJ misstated facts and overlooked other relevant evidence in order to improperly find inconsistencies in Bishop's testimony and render this testimony not credible.

10

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (SSA 1996).

In addition, the lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). *Villano,* 556 F.3d at 562 (an ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it."); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3;

11

562 (in evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons"); see 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ's "failure to adequately explain his or her credibility finding...is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015); *see also Finney v. Berryhill*, No. 16 C 3815, 2018 WL 1377908, at *4 (N.D. Ill. Mar. 19, 2018).

Initially, we note that the Social Security Administration recently determined that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of symptoms." Social Security Regulation (SSR) 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges are not in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an

individual's ability to perform work-related activities...." SSR 16-3p, at *2. SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

In addition, the court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.* Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, we find that the reasons provided by the ALJ for rejecting Claimant's statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). First, we find that in her analysis of Claimant's statements about her disabling symptoms, the ALJ misstated or misrepresented certain testimony and ignored qualifying statements made by the Claimant that would have undermined the ALJ's findings. The ALJ cited many daily activities without acnkowledging testimony that Claimant performed these activities only in a limited way. In particular, the ALJ relied on

13

Claimant's statements that she takes care of her personal hygiene, performs household chores such as laundry, vacuuming and mowing the lawn, caring for her large dogs, driving and maintaining a social life.  But Bishop made some qualifying statements about her ability to do all of these tasks, which the ALJ ignored.  For example, while she does "care for her large dogs," Claimant's testimony is that she takes them for a walk only about once a month.  Otherwise, she simply lets them out in her backyard and feeds them.  Contrary to the ALJ's findings, we do not believe that caring for her dogs in this limited manner is inconsistent with her complaints of disabling symptoms and limitations.  Similarly, the ALJ stated that Bishop takes care of her personal hygiene, but the record actually demonstrates that Claimant has some difficulty with this.  She stated she often has trouble holding a razor, using a hairbrush, or turning on the water.  The ALJ also ignored her testimony that she uses a special tool for opening jars and that her wrist and hand pain prevent her from stirring, cutting, chopping or typing on the computer for long periods of time. The ALJ also stated that she handles laundry and vacuuming, but her testimony was that she only does these things about once per month.  And lastly, the ALJ noted that she does needle work, but her testimony was that she enjoys this as a hobby but it does cause her hands to swell.  For these reasons, we find that the ALJ has overstated her ability to handle these household tasks and ignored her qualifying statements about her ability to perform these without pain or assistance. *Hines v. Berryhill*, No. 16-c-50064, 2017 WL 3310973, at *5 (N.D. Ill. Aug. 3, 2017) (remanding where the ALJ repeatedly mischaracterized the record in identifying purported "inconsistencies" in Plaintiff's testimony).  The ALJ did not discuss any of these qualifications in her analysis of Claimant's subjective complaints, and her failure

to do so requires remand. *Moss*, 555 F.3d at 562 ("An ALJ cannot disregard a claimant's limitations in performing household activities.").

In addition, the ALJ discredited Claimant's complaints because the record did not contain an opinion from a treating or examining physician who provided greater RFC limitations than what the ALJ recommended. In support, the ALJ cited to Exhibits 11 and 12. Exhibit 11 consists of medical records and no reference to any RFC evaluation. And in Exhibit 12, Dr. Rizvi recommends that Claimant have an RFC evaluation. Therefore, these records do not indicate that Dr. Rizvi made any determination about what limitations were appropriate. Indeed, it appears that he believed Bishop needed to be evaluated before he could make any such determination. As a result, again it appears that the ALJ is overstating facts in the record. While an ALJ need not discuss or give great weight to every piece of evidence in the record, she "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto*, 374 F.3d at 474.

Lastly, the ALJ failed to explain how Claimant's ability to complete limited daily activities undermines her allegations of pain or equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; see also *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place").

Also absent from the ALJ's analysis is an explanation as to how claimant's ability to perform these limited tasks undermines her complaints of debilitating pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"). We find that these limited activities do not necessarily demonstrate that Plaintiff can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week). Because the ALJ has failed to sufficiently articulate adequate grounds for dismissing Claimant's subjective complaints, we find remand is appropriate here.

In sum, we find that the ALJ's decision must be remanded because the ALJ misstated or ignored relevant evidence in the record regarding Claimant's subjective complaints and her statements about her daily activiites. While it is true the ALJ "is not required to address every piece of evidence," she "must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. Here, she ignored certain important qualifications in the Claimant's testimony about her ability to

perform daily activities and household tasks.  As a result, we find that she failed to articulate the logical bridge between the record and her decision, and the case must be remanded.

### D. Remaining Arguments

Because we have already determined that remand is appropriate, we need not address Bishop's remaining arguments.  For the most part, these arguments relate to her RFC determination, and on remand, the outcome of the ALJ's analysis may result in a different RFC assessment.  As a result, the Court need not now address Claimant's arguments regarding this determination.

### III.  CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. It is so ordered.

**DATED:  March 30, 2018**

_____
**The Honorable Michael T. Mason
United States Magistrate Judge**